In re Mark **TURNAGE**, Debtor.

**Christine Kasper, Plaintiff,**

**v.**

**Mark Turnage, Defendant.**

**Bankruptcy No. 08–86040–CRM.**
**Adversary No. 09–06145–CRM.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Nov. 30, 2011.

Melinda Davis Taylor, Spruell Taylor & Assoc., PC, Marietta, GA, Sharon T. McCoy, The McCoy Law Firm, Cartersville, GA, for Plaintiff.

Mark Turnage, Sierra Vista, AZ, pro se.

## ORDER

C. RAY MULLINS, Bankruptcy Judge.

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (the "Motion"). Plaintiff initiated this adversary proceeding seeking a determination that a debt owed by Defendant is nondischargeable pursuant to section 523 of the Bankruptcy Code (the "Code"). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and the Court has jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. The question presented is whether the doctrine of collateral estoppel (also known as issue preclusion) applies and entitles Plaintiff to summary judgment. The Court holds that collateral estoppel applies and Plaintiff is entitled to judgment as a matter of law. The Motion is therefore granted.

## I. FACTS

Plaintiff and Defendant were neighbors. In 2005, a series of disputes arose among neighbors in their subdivision. While walking her dog one evening, Plaintiff saw Defendant and another man, Daniel Penton,[1] and a dispute ensued. Defendant

---

1. Mr. Penton has also filed for relief under chapter 7 of the Bankruptcy Code, No. 08–

called police to report that Plaintiff had committed the crime of aggravated stalking. Unsatisfied that she was not immediately apprehended, Defendant "took it upon himself to go to the police station the following day . . . and 'adament[ly]' assert to the officer that he wanted [Plaintiff] arrested". *Turnage v. Kasper*, 307 Ga. App. 172, 704 S.E.2d 842, 851 (2010). Based on statements made by Defendant to police following the incident, Plaintiff was arrested and charged with aggravated stalking. Plaintiff spent two weeks in jail before her case was dismissed for lack of probable cause.

Plaintiff filed an action against Defendant and Mr. Penton in Cobb County State Court for malicious prosecution, intentional infliction of emotional distress, and defamation. A jury trial was held and the jury awarded Plaintiff compensatory damages on every claim and attorney's fees totaling $210,500.00. *Pl.'s Br. Supp. Mot. Summ. J.*, 26–27, Doc. No. 19. On June 2, 2008, the trial court entered judgment on the jury's verdict against Defendant and Mr. Penton jointly and severally. *Pl.'s Br. Supp. Mot. Summ. J.*, 28, Doc. No. 19.

Defendant and Mr. Penton appealed the state court judgment, arguing that the jury verdict was not supported by the evidence. In a lengthy opinion, dated November 30, 2010, the Georgia Court of Appeals found that there was sufficient evidence to support the jury's decision to award Plaintiff separate and distinct damages for malicious prosecution and intentional infliction of emotional distress. *Turnage v. Kasper*, 307 Ga.App. 172, 704 S.E.2d 842, 856–57 (2010). The Court of Appeals affirmed the verdict as to all claims against Defendant.[2] The case was remanded to determine the issue of damages against Defendant for his defamation of Plaintiff. Plaintiff subsequently withdrew the defamation claims against Defendant and Mr. Penton and requested the state court to enter judgment on the remaining claims. On February 2, 2011, the Cobb County State Court entered a judgment against Defendant and Mr. Penton, jointly and severally, in the amount of $191,550.00 plus costs (the "State Court Final Judgment").[3]

While these actions were pending in the state court system, Defendant filed his chapter 7 case on December 19, 2008.[4] On March 13, 2009, Plaintiff filed a Complaint to determine the nondischargeability of Defendant's debt pursuant to section 523(a)(6) of the Code. Defendant filed an Answer on April 13, 2009, in which he indicated that he was appealing the state court decision. A hearing before the Court was held on December 9, 2009, during which Plaintiff made an oral motion for relief from stay to continue the state court action. The Court granted the oral motion in an order dated November 19, 2010. Following entry of the state court's final judgment, Plaintiff filed this Motion. Plaintiff claims that the doctrine of collateral estoppel bars the relitigation of facts,

85405–JEM. There is a parallel adversary proceeding, Adversary Proceeding No. 09–06144, pending against Mr. Penton before Judge Massey.

**2.** The decision affirmed the judgment as to the claims of malicious persecution and intentional infliction of emotional distress against Mr. Penton.

**3.** The Judgment allocated damages as follows: $94,750.00 for the malicious prosecution claim; $75,800.00 for the intentional infliction of emotional distress claim; and $21,000.00 for attorney's fees and litigation expenses. *Pl.'s Br. Supp. Mot. Summ. J.*, 31, Doc. No. 19.

**4.** The bankruptcy case was closed on August 14, 2009.

allowing the Court to enter judgment as a matter of law.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

In accordance with Rule 56 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court will grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir. 1982). Once the moving party has made a prima facie showing of its right to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. DISCUSSION

In the instant adversary proceeding, Plaintiff seeks a determination that the debt owed to her by Defendant is nondischargeable as a matter of law under section 523(a)(6) of the Code. A presumption exists that all debts owed by the debtor are dischargeable unless the party contending otherwise proves non-dischargeability. 11 U.S.C. § 727(b). The purpose of this "fresh start" is to protect the "honest but unfortunate" debtors. *United States v. Fretz (In re Fretz)*, 244 F.3d 1323, 1326 (11th Cir.2001). The burden is on the creditor to prove the exception to discharge by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S.

279, 287–88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir. 1993). Courts should narrowly construe exceptions to discharge against the creditor and in favor of the debtor. *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301 (11th Cir.1994); *St. Laurent*, 991 F.2d at 680.

Plaintiff argues that Defendant is precluded from re-litigating issues regarding dischargeability because they were the subject of a final judgment rendered by the state court. *Pl.'s Mot. Summ. J.*, 4, Doc. No. 18. The doctrine of collateral estoppel prohibits re-litigation of issues already adjudicated by a valid and final judgment of another court. *In Re Bilzerian*, 100 F.3d 886, 892 (11th Cir.1996). The Supreme Court has held that the doctrine applies in bankruptcy nondischargeability determinations. *Grogan*, 498 U.S. at 285 n. 11, 111 S.Ct. 654. In employing the doctrine of collateral estoppel, the bankruptcy court applies the law of the court issuing the prior judgment. *St. Laurent*, 991 F.2d at 675–76; *In re Brownlee*, 83 B.R. 836, 838 (Bankr.N.D.Ga.1988); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 87 (1982). The prior judgment in this case was issued by a Georgia court and, therefore, Georgia law will determine whether collateral estoppel bars re-litigation under the present circumstances.

Under Georgia law, collateral estoppel applies when the following elements are met: 1) there is an identity of parties between the two cases; 2) there is an identity of issues between the two cases; 3) actual and final litigation of the issue in question occurred; 4) the adjudication was essential to the earlier action; and 5) the parties had a full and fair opportunity to litigate the issues in question. *See Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 921 (Bankr.N.D.Ga.2010) (Hagenau, J.);

*Lusk v. Williams (In re Williams)*, 282 B.R. 267, 272 (Bankr.N.D.Ga.2002) (Mullins, J.). The Court finds that there are no genuine issues of material fact as to these elements.

■ First, there is no dispute that the parties in the state court action and the instant adversary proceeding are the same. Accordingly, the Court finds that the State Court Judgment satisfies the identity of parties prong of the test for collateral estoppel.

■ Second, an identity of issues exists as to Defendant's "willful and malicious" conduct. The determination in the state court proceedings is the same determination as whether the debt was incurred by malicious injury under section 523(a)(6) of the Code. If the Court were to allow this issue to be re-litigated, it would evaluate the same elements and apply the same facts as the state court did in the State Court Proceeding. That is because the elements required to prove malicious prosecution and intentional infliction of emotional distress under Georgia law closely resemble the elements needed to establish a willful and malicious injury for purposes of section 523(a)(6)[5].

■ Section 523(a)(6) excepts from discharge an individual's debts incurred by "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Section 523(a)(6) generally relates to torts and "may apply to a broad range of conduct causing harm to people … subject to the limitation that the injury be 'willful and malicious.'" 4 Alan N. Resnik & Henry J. Sommer, *Collier on Bankruptcy* ¶ 523.12 (16th ed. 2009). Under this section, "willful" acts are those that are "deliberate or intentional." S. REP. NO. 95–989, at 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865; H.R. REP. No. 95–595, at 365 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320. A showing of mere recklessness does not establish willfulness. *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). "Malicious" acts under this section are "wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will." *Matter of Holt*, 173 B.R. 806, 812 (Bankr.M.D.Ga.1994). Courts have held that a wrongful act done intentionally, which necessarily produces harm or which has a substantial certainty of causing harm and is without just cause or excuse, is "willful and malicious" within the meaning of section 523(a)(6). *See In re Walker*, 48 F.3d 1161, 1164 (11th Cir.1995); *accord Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 37 C.B.C.2d 1370 (1st Cir.1997) (collecting cases).

Here, the Georgia Court of Appeals concluded that there was evidence from which the jury could have found Defendant "liable for the separate and distinct injuries of malicious prosecution and intentional in-

---

5. In Georgia, to prevail on a claim for malicious prosecution, a plaintiff must show that the prosecution was 1) criminal in nature, 2) instigated without probable cause, 3) with malice, 4) pursuant to a valid warrant, accusation, or summons, 5) terminated favorably to the plaintiff, and 6) damaging to the plaintiff. *Turnage v. Kasper*, 307 Ga.App. 172, 704 S.E.2d 842, 850 (2010) (citing O.C.G.A. § 51–7–40 ("A criminal prosecution which is carried out maliciously and without probable cause and which causes damage to the person prosecuted shall give him a cause of action.")). A claim for intentional infliction of emotional distress requires proof that: 1) the defendant's conduct was intentional or reckless, 2) the defendant's conduct was extreme and outrageous, 3) there exists a causal connection between the wrongful conduct and the emotional distress, and 4) the distress was severe. *Turnage*, 704 S.E.2d at 857 (citing *Cook v. Covington Credit of Ga., Inc.*, 290 Ga.App. 825, 660 S.E.2d 855 (2008)).

fliction of emotional distress as a result of the events surrounding [Plaintiff's] arrest, prosecution, and incarceration." *Turnage,* 704 S.E.2d at 857. The decision did not stop there. The Georgia Court of Appeals went on to chronicle the extensive evidence that supported each claim. *Id.* at 857–58. The decision established that Defendant either intended to cause Plaintiff's emotional distress or that his conduct was so reckless that a reasonable person would know that emotional distress would result. *Pl.'s Statement of Material Facts as to Which There is No Genuine Issue,* ¶ 15, Doc. No. 17 (quoting *Turnage,* 704 S.E.2d at 851 (the "facts were more than sufficient" to support the jury's finding that Defendant "instigated and procured" Plaintiff's arrest)). This is sufficient to establish that Defendant's conduct was willful within the meaning of section 523(a)(6). Further, the finding that Defendant's conduct surrounding Plaintiff's arrest showed "malicious purpose and wanton disregard" of Plaintiff's rights establishes that Defendant's actions were malicious. *Turnage,* 704 S.E.2d at 853. The state court decision and State Court Final Judgment demonstrate that Defendant caused Plaintiff willful and malicious injury under section 523(a)(6). The Court finds that an identity of issues exists as to the elements of willful and malicious injury.

 Third, plaintiff's claims were actually and finally litigated in state court. In general, "when a question of fact is . . . submitted to the trier of fact for its determination, and is determined, that question of fact has been actually litigated." *Williams,* 282 B.R. at 272 (citing 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 132.03[2][c] (3d ed. 1999)). Here, malicious prosecution and intentional infliction of emotional distress were both submitted to the jury for determination and a jury returned a verdict on both issues. A judgment was entered against Defendant as to all claims. Defendant also pursued the case on appeal. As there is no genuine issue of fact as to the existence or substance of the state court proceedings, allowing Defendant to re-litigate the issue here would simply be giving him another bite at the apple. The Court therefore finds that the issues in state court were actually and finally litigated.

Fourth, the state court essentially determined the issue of Defendant's willful and malicious injury. The parties do not dispute the language of the State Court Final Judgment as it has been presented to the Court. Further, the language in the documents finding the Defendant liable for malicious prosecution and intentional infliction of emotional distress is beyond controversy. The Defendant's conduct was the basis for the state court award of damages and for the decision affirming that award on appeal. Accordingly, as to liability, the Court concludes that the state court's determination as to the nature of Defendant's conduct was essential to its judgment in satisfaction of the fourth collateral estoppel prong.

 Finally, Defendant had a full and fair opportunity to litigate the issue in question. This requirement is rooted in due process concerns. *Williams,* 282 B.R. at 277 ("Out of fairness, a party to an action should not later be prohibited in a second action from protesting an issue which he or she could not properly address in the first action." (citing 5 THOMAS C. RAWLINGS, GEORGIA PROCEDURE, CIVIL § 6:30)). The key to whether a defendant has had a full and fair opportunity to contest the issues is to determine whether the party had adequate notice of the issue and was afforded the opportunity to participate in its determination. *Id.* Defendant does not contend that he did not receive

notice in the state court proceedings, nor does Defendant claim he was afforded less than a full right to participate in the adjudication in state court. In fact, Defendant retained an attorney in the state court action, filed an answer, participated in discovery, presented the case to a jury, and filed an appeal. Accordingly, the Court finds that Defendant had a full and fair opportunity to litigate the issue in the prior case.

Having proved by a preponderance of the evidence no genuine issue of fact exists with respect to the elements of collateral estoppel, the Court finds Plaintiff has met its burden. The Court finds that there is a clear identity of the parties and of the issues; that all of the elements of section 523(a)(6) were actually and necessarily litigated in state court; a finding on each of the claims was essential to the state court judgment; and, finally, Defendant had a full and fair opportunity to litigate the issues in the earlier proceedings. Therefore, the Court applies the doctrine of collateral estoppel and grants summary judgment in favor of Plaintiff on the issue of Defendant's willful and malicious conduct under section 523(a)(6) of the Code. The debt arising from the state court judgment is thus deemed non-dischargeable pursuant to section 523(a)(6).

## IV. ATTORNEY'S FEES

 In addition to challenging the dischargeability of Defendant's debt for compensatory damages, Plaintiff contends that the debt for attorney's fees embodied in the judgment is also not dischargeable. "Attorney fees are routinely included in the non-dischargeable debt under § 523(a)(6) when they are included in a judgment for damages due to willful and malicious injury and are ancillary to that judgment." *Stinson v. Morris (In re Morris)*, No. 05–9031, 2005 WL 6459867, at *4,

2005 Bankr.LEXIS 2685, at *10 (Bankr. N.D.Ga. Dec. 1, 2005) (Massey, J.) (citing *In re Zentz*, 157 B.R. 145, 150 (Bankr. W.D.Mo.1993)). Attorney's fees are recoverable in Georgia in the case of an intentional tort as an additional element of damages. Georgia law specifically provides:

The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

O.C.G.A. § 13–6–11. The section establishes circumstances in which a plaintiff may recover litigation expenses as an additional element of damages and permits the recovery of attorney's fees as separate, special damages flowing from the underlying tort. *Mills v. Ellerbee (In re Ellerbee)*, 177 B.R. 731, 746 (Bankr.N.D.Ga.1995) (Massey, J.) (citing *Brown v. Baker*, 197 Ga.App. 466, 398 S.E.2d 797 (1990)). Cases interpreting the section have established that intentional torts invoke a species of bad faith that entitles a plaintiff to recover the expenses of litigation, including attorney fees, because having to incur fees to collect the other damages is itself an injury flowing from the tort. *See DeKalb County v. McFarland*, 231 Ga. 649, 203 S.E.2d 495, 497 (1974).

Here, the State Court Final Judgment awarded $21,000 for attorney's fees. Because Defendant committed intentional torts that caused damage to Plaintiff, Plaintiff is entitled to recover her attorney's fees incurred in connection with that recovery because, under Georgia law, they constitute additional, special damages for the willful and malicious injury inflicted by Defendant. The debt for attorney's fees is thus nondischargeable under section 523(a)(6). Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment be and is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the entire indebtedness on which Plaintiff's claim is based is **EXCEPTED FROM DISCHARGE** pursuant to section 523(a)(6) of the Bankruptcy Code.